**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIK CASTLE, Individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS,<br><br>            Defendants. | **Case No.: 2:24-cv-04850-JHS**<br><br>CLASS ACTION |

**MEMORANDUM OF LAW OF WILLIAM MIZUK IN OPPOSITION TO**
**COMPETING LEAD PLAINTIFF MOTIONS**

Lead Plaintiff Movant William Muzik ("Mr. Muzik" or "Movant") respectfully submits this memorandum in opposition to the competing lead plaintiff motions filed by: (i) Safyari Keyan (Dkt. No. 11)[1]; (ii) Kendall J. Behnke and Peter W. Galla (the "Behnke Group" or the "Group") (Dkt. No. 12); and (iii) Anatol Rawicz and Jeanne Schutte (Dkt. No. 14).[2]

## I.       INTRODUCTION

Before the Court are two remaining lead plaintiff motions—the so-called "Behnke Group" comprised of two unrelated investors and Mr. Muzik. While the Behnke Group claims bigger losses than Mr. Muzik, the Group fails to qualify as the presumptive lead plaintiff as it cannot meet Rule 23's typicality and adequacy requirements. Indeed, the Behnke Group is atypical and inadequate because it is an is an improper, unrelated grouping of investors cobbled together by counsel.

In contrast, Mr. Muzik has the largest losses and satisfies the adequacy and typicality requirements of Rule 23. He is a sophisticated investor with approximately 13 years of investing experience, holds a degree in Health Management, and works as a Regional Medical Sales Advisor.  Dkt. No. 12-1 at 9. Mr. Muzik purchased and held Coinbase stock through the Class Period and lost approximately $102,283 in connection with those transactions. Dkt. No. 12-5. Moreover, Mr. Muzik is not proffered as part of an unrelated group and is ready willing and able to serve as Lead Plaintiff.

In short, Mr. Muzik is presumed to be the "most adequate plaintiff" and, therefore, should be appointed lead plaintiff on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

1 On November 26, 2024, Safyari Kenyan filed a notice of withdrawal of their motion seeking appointment as lead plaintiff. Dkt. No. 16.

2 On November 26, 2024, Anatol Rawicz and Jeanne Schutte filed a notice of non-opposition to the competing lead plaintiff motions. Dkt. No. 15.

## II.    ARGUMENT

In appointing a lead plaintiff, "the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id.* "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and is thus the presumptively most adequate plaintiff." *Id.* Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Id.* at 265. In addition, the presumptive lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should … disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* at 267.

### A.    THE BEHNKE GROUP IS AN IMPROPER GROUP OF UNRELATED INVESTORS CREATED BY COUNSEL

The Behnke Group is an improper group of two unaffiliated investors brought together by counsel to create the largest financial interest. Importantly, the Group provides no client- or class-driven reason for the grouping nor have not shown how they will function cohesively or

independently of counsel. *See, e.g., Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (holding "a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs.")

"Essentially, the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement." *Chao Sun v. Han*, Civ. No. 15-703, 2015 WL 2364937, at *4 (D.N.J. May 14, 2015). If the court determines that "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Dang v. Amarin Corp. PLC*, No. CV 21-19212 (GC)(TJB), 2022 WL 15524944, at *5 (D.N.J. Oct. 27, 2022). If the court finds that "a movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id.*; *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) ("[I]f a movant 'group' was created by the efforts of lawyers for the purpose of ensuring that it is named lead counsel, the 'group' should not be named lead plaintiff."); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307–08 (S.D.N.Y. 2001) (refusing to appoint as lead plaintiff a group that was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel' "); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) (finding

proposed lead plaintiff group "ha[d] not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group.'").

In a similar situation as here, the court in *Takata v. Riot Blockchain, Inc.* appointed an individual movant with smaller losses over two groups of unrelated investors with larger losses as they each failed to satisfy the adequacy requirement. 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018). Mr. Muzik urges the Court to apply the same analysis here.

1.  ***THE BEHNKE GROUP'S INCOMPLETE JOINT DECLARATION AND LACK OF DISPUTE RESOLUTION MECHANISM DEMONSTRATES THAT THE GROUP IS LAWYER-DRIVEN***

While the Behnke Group submitted a joint declaration in an effort to support their group, the declaration is insufficient and raises more questions about the group. First, "what is conspicuously absent" from the joint declaration is any information regarding how Mr. Behnke, who resides in California, and Mr. Galla, who resides in New York, found each other. Dkt. No. 13-6, ¶¶ 2, 3; *see Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses in part because the members did not provide "any information regarding how these five apparent strangers from different states found each other" and further noting the group was "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*"); *Chao Sun v. Han*, 2015 WL 2364937, at *4 (D.N.J. May 14, 2015) (based on the declaration of two unrelated individuals that did not explain how they met, the court found that the two "cannot work effectively to adequately represent the interests of the class as they appear to concede that the only pre-existing

5

relationship among them is the fact that they invested in the same [company] securities…[t]he extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit."); *Takata,* 2018 WL 5801379, at \*5 (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the *Cendant* court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.); *see also, Kniffin v. Micron Tech, Inc.,* 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (court not persuaded by a declaration that the group would function cohesively); *Jakobsen v. Aphria, Inc.,* No. 18 CIV. 11376 (GBD), 2019 WL 1522598, at \*2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently.); *In re Ply Gen Holdings, Inc., Sec. Litig.,* No. 14-CV-3577 (JPO), 2014 WL 12772081, at \*2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation").

Moreover, the Behnke Group's joint declaration is strikingly and clearly incomplete. Dkt. No. 13-6. After offering a brief background of each group member, the joint declaration states, "In deciding to seek appointment as lead plaintiff together, we considered the benefits and potential drawbacks of proceeding individually or jointly as lead plaintiff. Because of the complexity of the case, and the substantial losses suffered because of defendants' alleged []". *Id*. ¶4. The declaration then cuts off, midsentence, in its entirety. *Id*. As courts have found, "errors in documents submitted in connection with motions for lead plaintiff status raise concerns about a party's adequacy to serve as lead plaintiff." *May v. Barclays PLC,* No. 23-CV-2583 (LJL), 2023 WL 5950689, at \*18

(S.D.N.Y. Sept. 13, 2023). The two signature pages, which follow, that are dated the same day the motion was filed, each contain both individuals' names but were signed separately, further suggesting a lack of cohesion between the members of the Behnke Group. *Id.* at 3, 4. This hastily drafted and signed joint declaration clearly demonstrates that the Behnke Group is a last-minute creation by counsel, and not one driven by the client. This simply is improper.

The Behnke Group members failing to oversee counsel and prevent their facially incomplete joint declaration from being filed to begin with is disqualifying (as they failed to demonstrate their adequacy and as they failed to oversee counsel). There is no indication that any Behnke Group member, nor their counsel, read their own filings as they have failed to include the rest of their joint declaration's fourth paragraph. This demonstrates that the Behnke Group is failing to oversee their counsel and this case already.

Further, there is no language indicating the members of the Behnke Group have communicated with one another at all or were even aware that they had been grouped together.

The Behnke Group joint declaration also contains no language addressing dispute resolution. Dkt. No. 13-6. Without dispute resolution language, it is impossible to evaluate how these unrelated individuals, cobbled together into a group by their counsel, could properly oversee this litigation. Courts have even rejected groups who have taken care to establish dispute resolution mechanisms. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.,* 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2023) (court found group's dispute resolution mechanism "at odds with the PSLRA's presumption that the movant with the largest financial interest will control the litigation"); *Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (rejecting lead plaintiff movant group on similar grounds). Here, there simply is no language for

the Court to evaluate whether a dispute mechanism exists, could work, or would comply with the PSLRA.

Courts in this Circuit and elsewhere have rejected unrelated groups who have provided more robust joint declarations than the one provided by the Behkne Group here. *See Takata,* 2018 WL 5801379, at *5 (rejecting group where movants' joint declaration left court with "serious concerns" regarding movants' ability to monitor their proposed counsel such that they could adequately represent class); *Stires*, 2018 WL 5784817, at *5 (rejecting group despite joint declaration averring shared "interests in prosecuting the case in a collaborative, likeminded manner"); *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.,* No. 15-CV-3599, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) *(*rejecting group that "failed to provide the Court with anything beyond conclusory assurances that appointing a group of unrelated investors will not lead to fragmentation"); *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 119 (E.D.N.Y. Jan. 26, 2012); (holding insufficient group whose declaration stated its members "are similarly situated," "share common goals," and have "'shared belief regarding the role of corporate governance in detecting and preventing securities fraud'"); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011)  (rejecting proposed group whose "joint declaration contain[ed] myriad conclusory statements and generalizations, such as that they are a 'small, cohesive group' who 'intend to work closely together['] and they will 'communicat[e], individually or as a group, with each other and with counsel, to the extent [they] determine necessary to fairly and adequately represent the interests of the Class'").

The incomplete joint declaration, lack of any means of communication between the Behnke Group members, lack of known communication between the Behnke Group members, and the lack

of dispute resolution mechanism demonstrate that the Behnke Group is a grouping of unrelated plaintiffs with a lack of control over counsel.

### 2. GROUP MEMBERS CANNOT BE CONSIDERED INDIVIDUALLY

The Court should not permit the members of the Behnke Group to be considered individually as neither member in the Behnke Group requested that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Group. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts."); *Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as

lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis).

### B.   MR. MUZIK SHOULD BE APPOINTED LEAD PLAINTIFF

The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements] of Rule 23." *Aude v. Kobe Steel, Ltd.,* No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y Apr. 4, 2018); *see also Kaplin v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). As discussed above, the Behnke Group does not meet the requirements of Rule 23.

The PSLRA then requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality. *See, Varghese,* 589 F. Supp. 2d at 396 n.7 ("If [the movant alleging that greatest financial interest] does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23."); *see In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir.).

In contrast to the Behnke Group, Mr. Muzik is the lead plaintiff movant with the greatest losses who meets the requirements of Rule 23. As set forth herein and in his opening memorandum, (Dkt. No. 12), Mr. Muzik is not subject to unique defenses and satisfies the requirements of being a lead plaintiff.  Mr. Muzik is a sophisticated investor with approximately 13 years of investing experience. Dkt. No. 12-1 at 9. He holds a degree in Health Management and works as a Regional Medical Sales Advisor.  Dkt. No. 12-1 at 9. Mr. Muzik purchased and held Coinbase stock through the Class Period and lost approximately $102,283 in connection with those transactions. Dkt. No. 12-5. Furthermore, the class would benefit from Mr. Muzik as lead plaintiff because he is educated,

knowledgeable, and an experienced trader. Mr. Muzik did not engage in any unusual trading patterns that would distract from the litigation and subject him to unique defenses.

To overcome the strong presumption entitling Mr. Muzik to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists nor has been proffered that Mr. Muzik is inadequate to be the Lead Plaintiff. As Mr. Muzik has made a *prima facie* demonstration of his typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Muzik should be appointed Lead Plaintiff.

## C.  MR. MUZIK'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel."); *Kaplan v. S.A.C. Capital Advisors, L.P.,* 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398).

Here, Mr. Muzik has selected The Rosen Law Firm, P.A. ("Rosen Law"), with counsel at home in this Court, as Lead Counsel for the Class. As its resume reflects and courts have previously concluded, Rosen Law is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 12-6; *see also Yedlowski v. Roka Bioscience, Inc.*, 2016 WL

6661336, at \*21 (D.N.J. Nov. 10, 2016) (finding that Rosen Law "is highly experienced in the complex field of securities fraud class action litigation.").

Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. Dkt. No. 12-6. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen Law as the Number 3 securities class action firm both in terms of amount recovered for investors – $438,340,000 – and the number of settlements – 12.[3] Founding partner, Laurence Rosen, was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[4] Thus, the Court may be assured that by approving Mr. Muzik's selection of counsel, the members of the class will receive excellent legal representation.

## III.    CONCLUSION

For the foregoing reasons, Mr. Muzik's motion should be granted in its entirety and the competing motions should be denied.

Dated: November 26, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ *Olivia D. Simkins*
Olivia D. Simkins, Esq. (PA ID: 336339)
Jacob A. Goldberg, Esq.
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: osimkins@rosenlegal.com
          jgoldberg@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 40th Floor

---

3 https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
4 https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com

*[Proposed] Lead Counsel for*
*Movant and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Olivia D. Simkins