**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIK CASTLE, Individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS,<br><br>               Defendants. | **Case No.: 2:24-cv-04850-JHS**<br><br>CLASS ACTION |

**REPLY IN SUPPORT OF WILLIAM MUZIK'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Lead Plaintiff Movant William Muzik ("Mr. Muzik" or "Movant") respectfully submits this reply in further support of his motion for appointment as lead plaintiff and approval of selection of counsel. Dkt. No. 12.

## I.      INTRODUCTION

Mr. Muzik is the only lead plaintiff pursuing the appointment in earnest. While Mr. Kendall J. Behnke and Mr. Peter W. Galla (the "Behnke Group" or the "Group") claim larger losses than Mr. Muzik, "[i]f (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should … disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Here, the Behnke Group's opposition relies on conclusory and unsupported assertions and fails to rehabilitate its inability to meet Rule 23's typicality and adequacy requirements, which are apparent through the Group's opening papers. Further, the Group's attempt to correct the incomplete Joint Declaration filed with its opening papers, after the error was raised by Mr. Muzik, solidifies concern with the Behnke Group's ability to fairly and adequately represent the Class. Mr. Muzik, accordingly, is the presumptive lead plaintiff.

## II.     THE BEHNKE GROUP'S OPPOSITION IS CONCLUSORY AND ITS OPENING PAPERS ARE UNASSISTED BY THE GROUP'S FILING OF A CORRECTED JOINT DECLARATION

In asserting its typicality and adequacy, the Behnke Group's opposition merely states: "[h]ere, there is ***no question*** that Mr. Behnke and Mr. Galla are typical and adequate of the putative class and are otherwise ***perfectly situated*** to represent all class members." Dkt. No. 17 at 4 (emphasis added). Mr. Muzik disagrees. *See generally Muzik Opposition*, Dkt. No. 18. The Behnke

Group is an improper grouping of unrelated investors cobbled together by counsel, without a client- or class-driven purpose, that has not sufficiently shown how its members will function cohesively or independently of counsel, and which failed to oversee counsel such that an incomplete Joint Declaration was filed. *Id*.

With respect to the Joint Declaration, on December 2, 2024, after Mr. Muzik pointed out that the Behnke Group's Joint Declaration glaringly cut off mid-sentence and failed to indicate that the members of the Group know each other; have communicated; have the means of communicating; are aware they filed a motion for appointment as lead plaintiff jointly; have agreed upon a dispute resolution mechanism; or have the ability to oversee and control counsel, counsel for the Behnke Group filed a purportedly corrected version of the Joint Declaration. *Id.*; Dkt. No. 19-1. In support thereof, counsel's own declaration asserted that "due to a technological error made by counsel during the electronic filing process, one page of Mr. Behnke and Mr. Galla's Joint Declaration (ECF 13-6) was inadvertently deleted during the course of uploading and filing the document. The full and complete joint declaration executed by Mr. Behnke and Mr. Galla on November 12, 2024 is submitted herewith as Exhibit A." Dkt. No. 19, ¶ 3.

This vague explanation by counsel, along with an examination of the complete Joint Declaration itself, only works to reveal additional deficiencies.

1. ***THE SIGNATURE PAGES OF THE CORRECTED JOINT DECLARATION SUGGEST A LACK OF COHESION BETWEEN THE BEHNKE GROUP MEMBERS AND AN ATTEMPT BY COUNSEL TO CONTROL THE LITIGATION***

First, the Joint Declaration appears to have been signed by the Behnke Group through DocuSign. DocuSign enables multiple signatories to easily execute their signature on the same page of a single document through what Docusign refers to as an "envelope" – a digital container that holds one or more documents, can be sent to multiple recipients, and contains information

about where they need to sign.[1] In other words, there need only be one signature page for two recipients, even if signed in different locations, at different times, and on different days. Indeed, the signature pages of the Behnke Group's declaration reflect this, featuring a signature line for both group members on a single page. Generally, upon full execution by all parties, the sender and all recipients receive a copy of the final version of the document. Properly, this would not require further modification such that a "technical error" would result in a page being "inadvertently deleted during the course of uploading and filing the document," as was counsel's representation. Further, such explanations have been rejected. *Rodriguez v. DraftKings Inc*, No. 21-CV-5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y Nov 12, 2021) (court states that it "is not buying" the explanation of a "clerical error made when transcribing" despite movant's corrected filing "after being alerted to the error."). Indeed, courts have found that "errors in documents submitted in connection with motions for lead plaintiff status raise concerns about a party's adequacy to serve as lead plaintiff." *May v. Barclays PLC,* No. 23-CV-2583 (LJL), 2023 WL 5950689, at *18 (S.D.N.Y. Sept. 13, 2023).

Without explanation, there are *two* signature pages affixed to the Behnke Group's Joint Declaration, each of which are executed by only one group member, leaving the line for the other blank. *See* Dkt. No. 13-6, pgs. 4, 5; Dkt. No. 19-1, pgs. 4, 5. Of greater concern, Mr. Behnke and Mr. Galla's respective signatory pages are stamped with different Envelope ID numbers. *See Id*. A document's Envelope ID number is a permanent and "unique identifier generated for each envelope by the Docusign system"[2] that remains consistent across each page of the document

---

[1] Docusign, "*What is an Envelope in DocuSign?*", support.docusign.com/s/articles/000045001?language=en_US&rsc_301#:~:text=At%20Docusign%2C%20an%20envelope%20is,signers%20will%20sign%20the%20documents.

[2] DocuSign, "*Control Envelope ID Placement*", support.docusign.com/s/document-item?language=en_US&rsc_301&bundleId=gbo1643332197980&topicId=erv1578456367288.ht

within the envelope. While Mr. Behnke's signatory page has the same Envelope ID number as the substantive Joint Declaration, Mr. Galla's Envelope ID number does not match with the Envelope ID number on either Mr. Behnke's signature page or the Joint Declaration. [3] *See* Dkt. Nos. 13-6, pgs. 4, 5; 19-1, pgs. 4, 5. The separate signature pages and differing Envelope ID numbers raise eyebrows, as it indicates that the Group members were not sent one Docusign envelope with the exact same Joint Declaration. Had that been the case, the Envelope ID numbers on the two signature pages would be identical. Any pages included in the envelope sent to Mr. Galla, other than the signatory page, have not been provided to the Court. This leaves no assurance that the members of the Behnke Group agreed to identical terms, or to, exclusively, the terms within the corrected Joint Declaration.

Furthermore, it suggests that counsel may have sent different versions of a potential declaration to other prospective group members in an attempt to cobble investors who, together, could pass muster.

## 2. THE CORRECTED JOINT DECLARATION AGAIN HAS NO DISPUTE RESOLUTION MECHANISM, AND OTHER CONCERNS REMAIN

The additional page of the "corrected" Joint Declaration fails to resolve lingering concern regarding the Behnke Group's typicality and adequacy.

First, as Mr. Muzik raised in his opposition, "what [remains] conspicuously absent" is any information regarding how Mr. Behnke, who resides in California, and Mr. Galla, who resides in New York, found each other. *See generally* Dkt. No. 19-1. Indeed, absent from any filing by the

---

ml&_LANG=enus

3 The Envelope ID Number on Mr. Behnke's signature page is 8EE61D0E-B467-4704-A9B2-FEC25AFC6B87, Dkt. No. 19-1, p.4, which aligns with the substantive pages of the Joint Declaration. *See generally* Dkt. No. 19-1. In contrast, the Envelope ID Number on Mr. Galla's signature page is BBE41E00-55AC-464A-A0D1-24E179576730, Dkt. No. 19-1, p. 5.

Behnke Group is an assertion that the Group would have come together but for the counsel behind the filing. Problematically for the Behnke Group, courts in this Circuit have repeatedly rejected groups moving for lead plaintiff for failure to show a sufficiently pre-existing relationship independent of counsel. *See Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at \*5 (D.N.J. Feb. 14, 2018) (rejecting investor group despite larger losses in part because the members did not provide "any information regarding how these five apparent strangers from different states found each other"); *Chao Sun v. Han*, 2015 WL 2364937, at \*4 (D.N.J. May 14, 2015) (rejecting group of two unrelated individuals that did not explain how they met, finding the two "cannot work effectively to adequately represent the interests of the class as they appear to concede that the only pre-existing relationship among them is the fact that they invested in the same [company] securities…[t]he extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit."); *Takata v. Riot Blockchain, Inc.,* 2018 WL 5801379, at \*5 (D.N.J. Nov. 6, 2018) (denying lead plaintiff status to a group as the "joint declaration [did] not allay the *Cendant* court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.") The Group's general assertion that the members have "each other's contact information and either of us may organize a meeting or conference call at any time, including on an emergency basis if necessary, with or without counsel" fails to establish that the Group can sustainably work together, effectively and independently, to adequately represent the interests of the Class throughout the pendency of the litigation, particularly where counsel has cobbled the members together. Dkt No. 19-1, ¶ 8.

Second, and building on the above concern, the purportedly complete Joint Declaration confirms that the Behnke Group has not considered, discussed, or agreed upon a dispute resolution mechanism. *See* Dkt. No. 19-1. As courts have rejected groups where joint declarations have

included inadequate dispute resolution agreements, this Court should reject the Behnke Group, which has no mechanism in place to guide the resolution of disputes that may arise between two unrelated group members brought together by counsel. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.,* 2013 WL 6145114, at \*2 (S.D.N.Y. Nov. 21, 2023) (rejecting group whose dispute resolution mechanism was "at odds with the PSLRA's presumption that the movant with the largest financial interest will control the litigation"); *Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at \*3 (C.D. Cal. Aug. 6, 2021) (rejecting group on similar grounds).

Third, the "corrected" Joint Declaration states that the Behnke Group will "oversee[] and monitor[] the progress of the litigation" and that "[i]n performing these duties, we will, among other things, review significant pleadings and motion papers …" Dkt. No. 19-1, ¶ 5. It further states, "[i]f appointed as lead plaintiff, we will work jointly to monitor and direct the efforts and activities of our proposed lead counsel …" *Id.* at ¶ 6. Yet the members of the Group did not review the documents filed with their own papers moving for appointment as lead plaintiff, as no correction to the incomplete declaration was brought to their counsel's attention until after the error was raised by Mr. Muzik. Moreover, given the above discussion regarding the Envelope ID numbers, the Group did not ensure that prior to filing, one Joint Declaration was signed by both Group members. The failure of the Behnke Group and its counsel to ensure the completeness of court filings raises concern about the group's adequacy and control over counsel, as well as counsel's ability to sufficiently represent the Class. *See Rodriguez,* 2021 WL 5282006, at \*9 ("Had [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place. Minor or not … the errors nonetheless speak to a level of carelessness that rightly calls into doubt [movant's] adequacy to be lead plaintiff") (internal quotations omitted).

Fourth, while the corrected Joint Declaration represents that "[b]efore filing this motion, we spoke together with and without counsel regarding this case," both the Behnke Group's PSLRA certifications and the Joint Declaration(s) *are all dated November 12, 2024*, the day lead plaintiff motions were due. Dkt. No. 13-4, pp. 2, 4; Dkt No. 13-6, pp. 3, 4; Dkt. No. 19-1, pp 3-5. Thus, it appears that any such conversation regarding "the claims against defendants, serving jointly as lead plaintiff, and ensuring that the class's claims will be efficiently and zealously prosecuted by our oversight of our proposed lead counsel" took place last-minute on the day of filing and at the behest of the Group's counsel. Dkt No. 19-1, ¶ 7.

Additionally, no filing by the Behnke Group includes a request for the members of the Group to be considered individually should the Court reject their grouping. In other words, the Behnke Group has conceded that they must be considered as the Group put forth. Even if the Group had requested such consideration, courts have found breaking up group movants improper. *See Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants due to court's concerns that the attorneys, and not the plaintiffs, initiated the efforts); *In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual members of a group as lead plaintiff because neither "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual members of group as lead plaintiff because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (where group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select

8

one member of the group."); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *4 (S.D.N.Y. 2019) (court declines to consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member as sole-lead). As such, the Behnke Group must be considered as a unit.

In contrast to the Behnke Group's conclusory assertion in its opposition, it is not true that there is "no question" that the Behnke Group is "typical and adequate of the putative class and are otherwise perfectly situated to represent all class members." Dkt. No. 17 at 4. Instead, questions regarding the Group's ability to fairly and adequately lead the class and control counsel have only been compounded. Courts in this Circuit and elsewhere have rejected groups despite demonstrations of cohesion far beyond that shown by the Behnke Group. *See Muzik Opposition* at 8.

## III.    MR. MUZIK SHOULD BE APPOINTED LEAD PLAINTIFF

On the other hand, no proof exists nor has been proffered that Mr. Muzik is atypical or inadequate. The Behnke Group does not contest, and thus concedes, Mr. Muzik's adequacy and typicality and his selection of The Rosen Law Firm, P.A. as Lead Counsel. *See generally* Dkt No. 17. As previously set forth, Mr. Muzik purchased and held Coinbase stock through the Class Period and lost approximately $102,283 in connection with those transactions. Dkt. No. 12-5. He is not subject to unique defenses and satisfies the requirements of being a lead plaintiff. Dkt No. 12 at 9. Furthermore, the class would benefit from Mr. Muzik as lead plaintiff because he is educated, knowledgeable, and has 13 years of investing experience. *Id*.

As in *Takata,* where the Court appointed an individual movant with smaller losses over two groups of unrelated investors with larger losses, as they each failed to satisfy the adequacy requirement, the Court should appoint Mr. Muzik to serve as lead plaintiff. 2018 WL 5801379, at

*5. Mr. Muzik is the *only* lead plaintiff movant who has made a *prima facie* demonstration of his typicality and adequacy and has the largest remaining financial interest. As such, Mr. Muzik respectfully requests that the Court grant his motion in full and deny the Behnke Group's competing motion.

Dated: December 3, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ *Olivia D. Simkins*
Olivia D. Simkins, Esq. (PA ID: 336339)
Jacob A. Goldberg, Esq.
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: osimkins@rosenlegal.com
        jgoldberg@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com

*[Proposed] Lead Counsel for
Movant and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Olivia D. Simkins