IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Erik Castle, | * | Docket # 24-cv-4850 |
|  | * |  |
| Plaintiff, | * |  |
|  | * | United States Courthouse |
| vs. | * | Courtroom 13A |
|  | * | Philadelphia, PA |
| Coinbase Global, Inc., | * |  |
| et al, | * | January 27, 2025 |
|  | * |  |
| Defendants. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOEL H. SLOMSKY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:          (Not Present)

For The Defendants:         Alexander C. Drylewski, Esquire
(For Coinbase, Armstrong    Lara A. Flath, Esquire
 And Haas)                  Skadden, Arps,  Slate, Meaghen
                            & Flom LLP
                            One Manhattan West
                            New York, NY 10001

For the Movants:

                            Phillips C. Kim, Esquire
                            Olivia Simkins, Esquire
(For William Muzik)         The Rosen Law Firm, PA
                            275 Madson Avenue, 34th Fl
                            New York New York 10016

2

(For Kendall Behnke)        Michael Albert, Esquire
(For Peter Galla)           Kenneth P. Dolitsky, Esquire
                            Robbins Geller Rudman Dowd LLP
                            655 West Broadway Suite 1900
                            San Diego, California 92101

                            Michael C. Dell'Angelo
                            Berger Montague PC
                            1818 Market Street
                            Suite 3600
                            Philadelphia, PA. 19103

Audio Operator:             Erica Pratt

Transcribing Firm:          Principle Court Reporting
                            Services, Inc., 544 Grove Ave.,
                            Suite 1, Johnstown, PA  15902
                            Telephone: 814-269-4666

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

3

I N D E X

                                                              PAGE

DISCUSSION AMONG PARTIES                                        4

CERTIFICATE                                                    37



                         E X H I B I T S

                         (NONE OFFERED)

4

THE COURT:   All right.  Everyone can remain seated and just speak into the microphone so we can get everything recorded.

ATTORNEY DELL'ANGELO:   Good morning, Your Honor. Michael Dell'Angelo from the law firm Burger Montague, proposed local counsel for motion 13 for movant, Behnke and Galla.

THE COURT:   All right. And ---

ATTORNEY DELL'ANGELO:   With me are proposed lead counsel also on motion 13 for Movant, Behnke and Galla to immediate right Kennth Dolitsky.

THE COURT:   Wait, can you speak a little louder.

ATTORNEY DELL-ANGELO:   Yes, Your Honor. To my immediate right Kenneth Dolitsky from the law firm of Robbins, Geller, Rudman and Dowd and to his immediate right, Your Honor, Michael Albert also from the law firm of Robbins, Geller, Rudman and Dowd.

ATTORNEY DOLITSKY:  Good morning, Your Honor.

THE COURT:   Good morning.  It's Michael ---

ATTORNEY ALBERT:   Albert.

THE COURT:   Albert.  All right. And --- all right. Now I think we have all counsel here that need to be heard this morning.  Is Jacob Goldberg not here?

ATTORNEY KIM:  He's not here, Your Honor, but I am from his office.

THE COURT:   All right. And --- all right. Now I

5

have in front of me the latest docket and I don't see that Mr. Kim, did you file an entry of appearance?

ATTORNEY KIM: I believe so, Your Honor.

THE COURT: You can remain seated, you don't have to stand.

ATTORNEY KIM: Sorry, Your Honor, old habit. I believe I filed pro hac vice motion and I think I am on the docket.

THE COURT: All right. Let me just take a look. Hold on one second.

ATTORNEY KIM: Docket entry number 25 is the granting of the motion. I think I might have just been cut off on the printout of that.

THE COURT: All right. Your name should be here. All right. We'll have to correct that. I don't see it. All right. And what about Olivia Simkins?

ATTORNEY SIMKINS: Yes, Your Honor.

THE COURT: Same thing?

ATTORNEY SIMKINS: I believe my appearance should be on the record.

THE COURT: All right. All right. So both of you are from the Rosen Law Firm?

ATTORNEY KIM: That is correct, Your Honor.

THE COURT: All right. And you wish to be appointed lead counsel?

ATTORNEY KIM:  That's correct.

THE COURT:    Okay.  All right.  And, Mr. Albert and Mr. Dolitsky represent the two other person that filed the motion and they wish to be appointed as lead counsel; correct?

ATTORNEY ALBERT:    Yes, Your Honor.

THE COURT:    All right.  So yeah, I guess what threw me off here is that one of the lawyers for Coinbase is Alexander Drylewski.

ATTORNEY DRYLEWSKI: Good morning, Your Honor, that's me.

THE COURT:    So you're here.

ATTORNEY DRYLEWSKI: Alex Drylewski and Lara Flath from Skadden Arps.

THE COURT:    All right. Can I ask you just to speak into a mic in the back.  You can just say what you said to the mic.

ATTORNEY DRYLEWSKI: Sure.  Is this better?

THE COURT:    Yes.

ATTORNEY DRYLEWSKI: Good morning, Your Honor, Ale Drylewski and Lara Flath from Skadden Arps on behalf of the defendants.

THE COURT:    All right. Welcome.

ATTORNEY DRYLEWSKI: Thank you.

THE COURT:    Okay.  Now I know who is who. All right.  The court listed this matter for a hearing this morning

because there have been competing requests to be lead counsel in this purported class action, security class action case. Originally the complaint was filed by Erik Castle, and he requested to be lead plaintiff represented by the Rosen Law Firm and then two other parties who would be covered by the class filed a motion for them to be lead counsel and I hope I pronounce these names right, Kendall Behnke.

ATTORNEY ALBERTS:    That's correct.

THE COURT:    And Peter Galla --- Galla to be represented by the --- I want to get the full name of the law firm, Robbins, Geller, Rudman and Dowd, LLP.

ATTORNEY ALBERTS:    That's correct.

THE COURT:    So I thought we should have argument on the motions. I have --- I have read document 12 which is a motion to appoint lead plaintiff filed by William Muzik.  Now what is Mr. Muzik's relation to Erik Castle?

ATTORNEY KIM:  Your Honor, we had made the motion on behalf of Mr. Muzik to be appointed lead plaintiff and lead counsel.

THE COURT:    Even though ---

ATTORNEY KIM:  There's no relationship between Mr. Castle and Mr. Muzik.

THE COURT:    All right.  Even though Mr. Castle is the one filing suit?

ATTORNEY KIM:  Yes, Mr. Castle filed a suit and then

8

we then filed the motion for lead plaintiff on behalf of Mr. Muzik given that he had a larger loss than Mr. Castle.

THE COURT:    So I read document number 12 which was the motion to appoint William Muzik. I have read document number 13 which is the motion to appoint. Again, with lead plaintiff and plaintiff's counsel filed by Kendall Behnke and Peter Galla. And I have read the responses to those motions and replies and they're documents number 17, 18, 19, 20 and 21 on the record.  And why don't I first hear from counsel for Mr. Muzik.

ATTORNEY KIM:  Yes, Your Honor. Should I remain stated here?

THE COURT:    You can remain seated as long as you pull up the mic and speak into the mic.

ATTORNEY KIM:  Yes, Your Honor.  So I won't rehash what was set forth in our papers but I think the critical question here and through the lens in which the court should review these papers is under the PSLRA so the purpose of the PSLRA, the Private Security Litigation Reform Act was to ensure that the court appoint a plaintiff, a lead plaintiff that would take an active role in the litigation and that was not the product of lawyer driven litigation.  That's one of the primary goals of the PSLRA is to ensure that you have a lead plaintiff that isn't lawyer driven, who can act independently and monitor counsel.  Now courts have looked at various factors indicia to

determine whether lead plaintiff is the product of improper lawyer driven litigation, right.  The factors relevant here would be do you have a lead plaintiff moving that is compromised of an unrelated group of investors, right. And we cited a number of cases where courts have said when you have an unrelated group of investors brought together by counsel to create the largest financial interest that's a factor would be dissuade a court from approving that group as lead plaintiff, right, because the idea is these are investors who had no pre-existing relationship, who's brought solely together by counsel. So that's a fact that's undisputed here which weighs against the appointment of the competing group.  Another indicia courts will look at is has the unrelated group of investors submitted any evidence to indicate how that group came to together, whether that group can function collectively and here the joint declaration as we've noted in our papers, there was snap Fu with their filing. They filed their joint declaration, it was missing a page. It's a sworn document, the only document other than the certification that the client would sign and approved that was not filed properly even though these unrelated investors have sworn in their declaration. They said in paragraph 5 of their declaration it says in performing these duties we will among other things review significant pleadings and motion papers and obtain regular status reports in the progress of the litigation.  So the critical document

10

that this unrelated group of investors filed with the court was filed improperly. And on top of it the joint declaration is dated November 12th which is the date these lead plaintiff motions were due and we submit that indicates that this is a group that was created on the 11th hour by counsel for the sole purpose of creating a large loss number. And I think that's also indicated from the fact that there's some discrepancies in the joint declaration. The joint declaration was signed using a program called Docusign and as we've explained in our papers when you have a multiple signatories on a Docusign document even if they're signed at separate times electronic, both signatures would appear in that document, the complete document. And once the competing movements filed the complete Docusign joint declaration the signature pages of each of the members of the group had different Docusign ID numbers indicating that each of these individuals received different versions or different documents purporting to be joint declarations. And what we say that shows, Your Honor, is that this group cannot work effectively together.  There are discrepancies in the joint declaration.  And look there might be an innocent explanation for it.  None has been provided as to why there were separate signature sheets but even if there is an innocent explanation for it think when you couple that with the fact that it's unrelated group of investors, that it's a document that executed November 12th, it indicates in a

exclusory what that there was some sort of discussion amongst the two members about moving as a group. We don't know, maybe the phone call took place the same day, maybe that's why we have these issues with the filings.  And I think under those circumstances this group that has been preferred before the court is not adequate, is not typical and does not meet the standards where courts have approved groups.  The other issue is you have a situation here where the two members of the groups have different losses.  Mr. Galla I believe lost $600,000. The other individual, Mr. Behnke, I believe lost $100,000.  And we noted in our papers that it's troubling that there's no dispute resolution mechanism and it can be --- it's problematic because you have a situation where Mr. Galla, you know, if their dispute resolution mechanism was well let's weigh our vote by loss that means that Mr. Galla would win every dispute.  There would really be no purpose of having Mr. Behne. If you had some --- if you had an equal vote that Mr. Galla and Mr. Behnke both had one vote I mean you obviously have a situation where you could have a tie but that wouldn't make any sense because under the PSLRA it's the adequate and typical investor with the largest financial interest that should be making the decision. So that begs that question well what's the point of having a group in any event, right. If you were to accept my colleague's position here that unrelated investor groups are okay, particularly where the members of

12

that group have the largest loss, right, they have larger losses than Mr. Muzik. If the court were to say well it really doesn't matter here because look their losses are already bigger so I'm just going to accept this group. If the court would accept that would mean in every situation you could have a lawyer driven group. You could have unrelated investors who would just group up and as long as their individual losses are bigger than the losses of a competing movement the court would accept that. And I don't think that's appropriate. I don't think that's reflected in the case law. We did cite a number of cases from courts in the third circuit that have disapproved unrelated groups. I know in reply they cited a number of cases from the Eastern District, and I think they're distinguishable. First there's a case they cite, China Advertech (phonetic) the supreme court case.  They say while the supreme court has recognized that courts can appoint unrelated groups of investors. Well it was in a footnote it's dicta and what the supreme court said is that was in the context of where you have statute limitations holding. Right, you have a situation that's not existing here.  Like here you have a number of plaintiffs that have moved for lead plaintiff and if for some reason the lead plaintiff were to be inadequate there other main plaintiffs and lead plaintiffs movement who filed lead plaintiff motions or cases so that the toll on the statute of limitations would not be an issue. So China Advertech doesn't

say that courts should appoint lead plaintiff, unrelated investors as lead plaintiff nor does it change the PSLRAs sort of focus on lawyer litigation.  Secondly there's a Strugo v. Lennett case. Their that case is different because there was an actual evidentiary showing that the group can work collectively. I think in that case there was a telephone conference amongst the lead plaintiff movements, a premotion telephone conference where the individuals have spoken with the court and the court was satisfied that it was not a lawyer driven group.  That's not the situation here.  Here we have a very conclusory joint declaration that wasn't even filed properly. A document that the group members swore that they would review which presumably they didn't after it was filed because it was only corrected after we raised the issue. Another case that was cited in the reply are the Energy Transfer cases.  I think that's the Allegheny, West Palm Beach pension fund cases. That's Eastern District of Pennsylvania. And their --- they were specific representations made in the joint declaration as to what the members actually did. What they did to enhance the ball, not sort of the conclusory type of representation that were made here.  Sorry, Your Honor, I kind of lost my place here. And the Universal Health case, I believe that's a case that Your Honor had that's cited by the competing movements but that a derivative case and that did not involve the PSLRA.  That also involved, though, a group of

14

unrelated shareholders, some of which were institutional investors and the plaintiffs in the Universal Health case and the court had explained that those plaintiffs have already demonstrated that they could work together. I believe that they had obtained numerous documents through a shareholder document demand and that those plaintiffs were working together cooperatively in obtaining and reviewing those documents. So that Universal Health case doesn't apply here. First, it doesn't apply because it's not a case governed by the PSLRA. And secondly, there's just simply no facts here that demonstrate that these two unrelated investors, one from California, the other one I believe from New York, has done anything collectively or independent of counsel to advance the ball in the litigation.  So I think given the circumstances in this case you have an unrelated group of investors with disport losses who live in the opposite sides of this country who have made errors and missteps in their filings which demonstrates that this is not a group that can work and manage counsel. They just haven't. So under those circumstances that motion should be denied and Mr. Muzik's motion who is here not as an unrelated group but as an individual investor who has a substantial hundred --- over a $100,000 loss should be appointed lead plaintiff and my firm appointed lead counsel. So unless the court has any questions I will turn the mic over to my colleagues across.

15

THE COURT:    I have questions.  I have questions.

ATTORNEY KIM:  Sure.

THE COURT:    I read carefully obviously the Cendant case by Juge Becker, from the third circuit. I looked at one of my colleague's cases, Judge Kearney and Lenett --- Strugo versus Lenett, Cendant is 264 fed 3rd 201.  That case was decided in 2001 and Judge Kearney's opinion is 2018 Wesler 627-1802 and that was decided in 2018 and I've read some other --- other decisions under the private – discussing the requirements under the Private Security Litigation Reform Act which counsel is know as the PSLRA.  And one thing I --- that I noticed is that the plaintiffs don't have to be related. You're not saying they have to be related, you're just saying that somehow they should have gotten together before counsel was appointed. They selected counsel?

ATTORNEY KIM:  I would agree, Your Honor that the plaintiffs do not need to be related.  It's a factor that would be considered in determining whether the group itself is an appropriate group so standing alone I would say that if they are unrelated that's a factor that would weigh against the appointment of that group provided --- assuming that there isn't any other evidence that would show that these unrelated members were not lawyer driven or that they could function cohesively to oversee counsel.

THE COURT:    All right. The second questions is, or

this is a statement. I'm not so concerned that the declarations were not originally filed accurately. They were corrected on the record and this could be an error by --- I know I read something about how it occurred, these are kinds of errors that I see in litigation once in a while done by the person filing whether it's a lawyer, a paralegal or if I may use the words lawyer driven so sometimes I --- I see that. Are you saying that because there is Docusign signatures because they didn't read --- read the joint declaration or are you saying they had to read it together, I'm not sure, quite sure what the --- what the argument is.

ATTORNEY KIM:  I think what I'm saying is given that the signature pages each had a different document ID that each of the members of the competing group reviewed a different document, right. If you have a Docusign document, if I have this document, this is the joint declaration, and I email this document to two people that entire document will have the same Docusign ID number.  And if she signs it and he signs it separately by email those signatures would then populate in this one document that would then be circulated, and the signature page or pages would have the same Docusign ID number. All we're saying is that whatever joint declaration that Mr. Galla signed was a different document than the document the other movement sign.

THE COURT:    Well how do you know it didn't have

17

the same content?

ATTORNEY KIM:  I don't know. We don't know. They haven't explained. But my point is even if the content was the same and I don't know, I just know the documents were different that along with that with --- I understand it's not a big deal sometimes things happen with the filing, they're just indica here that would indicate that the group is not working effectively. They didn't notice this until we raised it, right, these are movements that supposedly are --- they have to oversee the case. They have to monitor counsel. Are they're not receiving copies of their filings and reviewing them. I mean that's part of the duties of being a lead plaintiff. So maybe the documents were afford to the members of this group and maybe they didn't look at it.

THE COURT:    All right.  And my --- my final question that deals with the --- the two proposed lead plaintiffs separately. One of them as you said the record shows had a much larger loss than the other one, are you somehow saying that in terms of the level of sophistication they should have had resorted to some other procedure beforehand, before this lawsuit in order to protect their interest?  And if they didn't you're questioning their level of sophistication?

ATTORNEY KIM:  That's not --- I'm not questioning --- I'm not saying they should have done something as it relates to their sophistication. I think I've raised the point that they

have a wide gap between losses because there's an open question of how they are going to resolve dispute if they arise in the litigation because as a lead plaintiff one of your duties among others is to confer with counsel, formulate strategy, determine what the case will get resolved for.  Advance the litigation and you have a situation where one person has a $600,000 and another person has $100,000 and it can't be that each of them have an equal voice because that would violate the PSLRA. The PSLRA specifically says that the court should appoint as lead plaintiff the investors that has the largest financial interest. They're the ones that are supposed to make the decisions so how is that someone with $100,000 in loss which would be Mr. Behnke have the same amount of power as someone as Mr. Galla who has $600,000 in loss.

THE COURT:    Doesn't the statute also say they could be a group?

ATTORNEY KIM:  They can. They can be a group however the group has to be meet the adequacy and typicality requirements of the statute. And we cited cases where courts have looked at it and said well if you have an unrelated group of _____ (36:33) you have to make a showing, right, that's why they filed the joint declaration. I think everyone's in a agreement that when you have an unrelated group of investors there's a heighten showing that you need to make. That's why they filed the joint declaration.

THE COURT: And your client based on what I'm reading I believe loss about $100,000?

ATTORNEY KIM: That's correct.

THE COURT: All right. Okay. Why don't I --- anything further?

ATTORNEY KIM: Nothing, Your Honor, thank you.

THE COURT: All right. Why don't I hear from I guess it would be Mr. Dolitsky?

ATTORNEY ALBERT: Albert, Mr. Albert.

THE COURT: I'm sorry, Mr. Albert. Okay.

ATTORNEY ALBERT: Thank you, Your Honor. Unless, Your Honor, has specific questions or areas that you want me to address I was planning to address a few disagreements that appeared we have about standard, talk about Cendant a little bit and then also address the issue that my colleague raised about Mr. Behnke, Mr. Galla's motion.

THE COURT: Well, you should tell me why your client should be appointed as lead counsel --- lead plaintiff and you should be appointed as counsel. I know I've read extensively about it but I wanted to have a hearing to hear it directly from you. I also wanted to meet counsel to see who I would be appointing. It's always part of the court's, at least I feel, a court should do that. And also address, you do it in any order you want to address the --- the arguments of Mr. Kim's as to why your client shouldn't be appointed lead

counsel.

ATTORNEY ALBERT:    Thank you, Your Honor.  One thing that we agree upon with Mr. Kim is that the PSLRA creates the presumption, it's called the most adequate plaintiff presumption and that's the person or group of person's that has the largest financial interest and otherwise satisfies the technicality and adequacy requirements of rule 23.  As the largest financial interest there's no dispute that Mr. Muzik and Mr. Galla each lost significantly --- I apologize that Mr. Behnke and Mr. Gallas lost significantly more money than Mr. Muzik. Mr. Galla himself lost double the combined loss of all other class members seeking lead plaintiff status.  The second part of the most adequate plaintiff assumption is the rule 23 showing. And the third circuit in the Cendant (phonetic) case that Your Honor mentioned and just as background there's only two courts of appeals that have interpreted the lead plaintiff appointment provision of the PSLRA and third circuit, one of them Cendant it explicitly states that this initial inquiry into typicality and adequacy, quote, should be confined to determining whether the movement has made a prima facia showing. It's prima facia showing, Your Honor, and that's 264 f.3rd at page 263. The showing, quote, need not be extensive. Mr. Bahnke and Mr. Galla have demonstrated themselves to be sophisticated individuals with a combined half century of investment experience. They've spent decades navigating the

21

complexity of the market, managing risks and making informed decisions.  This experience and knowledge gives an understanding to effectively oversee this complex case for the benefit of the class members.  They're also not strangers to the legal process. They have experience hiring and overseeing the lawyers.  They also attested to their bonfidities in a joint declaration as Mr. Kim points out and --- and they stated their intent to vigorously prosecute this case together.  As to their group nature they've engaged in meaningful discussions before the filing of their lead plaintiff motion.  Both with and without counsel present on the calls and they formulated a plan for the case. They've established clear lines of communication to ensure a smooth and efficient process for leading this case and monitoring us. Another thing, Your Honor, and this might sound a little modest but they've chosen as their lead and local counsel firms that are among the most successful in the country at prosecuting these cases. There was just a study released last week by NERA, I think that's the National Economic Research Associates, showing my firm was responsible for eight of the top ten security class actions settlement of last year including $192 million settlement approved by Judge Wilson in the Middle District in what was the second largest securities class action recovery of all time in any Pennsylvania federal court. The largest such recovery in Pennsylvania federal court was obtained by Mr. Dell'Angelo's

22

firm, $334 million and that was two decades ago. That's just to say that Mr. Behnke and Mr. Galla their counsel reflect a commitment to securing the best possible representation for the class. They've easily made the required rule 23 showing to trigger the presumption. And they've gone above and beyond what judges of this court has required. They're precisely the type of small investment group that has been appointed in the 15 or so cases from this district that we cite in our briefing. Especially our replied brief, Your Honor. That's ECF-21. There's approximately another 15 cases that we didn't cite from within this district where groups are appointed because we thought it would be overkill. In contrast Mr. Muzik's counsel -- -- I'm sorry Mr. Muzik fails to cite a signal case from within this district where a group was rejected for the reasons that Mr. Muzik maintain that you should object our group. Cendant net provides that once the most adequate plaintiff presumption is triggered the question is not whether another movement might do a better job protecting the interest of the class and the presumptively plan. Instead and I'm quoting here, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job. The inquiry, quote, is not a relative one. There were four motions filed for lead plaintiff. Two of the movements withdrew or filed non-oppositions to Behnke and Galla's motion because they did not possess the largest financial interest. Mr. Muzik is the only

23

other movement and he hasn't even come close to rebutting that presumption with the required proof. Instead, Mr. Muzik speculates that Behnke and Galla cannot adequately represent the interest of the class because they lack a pre-existing relationship, because their joint declaration doesn't say the magic words that they believe should appear and because their signatures are not on the same page.  These arguments, Your Honor, they ultimately boil down to conjecture and speculation. That is has been repeatedly objected by judges of this court. The PSLRA and third circuit precedent require Mr. Muzik to put forth proof and he has failed to done that --- to do that. Now, Your Honor, I want to address this --- some specific issues raised by Mr. Muzik. The first one is this issue of the missing page of the joint declaration.  And that's ligament criticism. And Your Honor, I apologize it was a technical glitch on my part that resulted in the omission of that page from the joint declaration.  I assure you that Mr. Behnke, Mr. Galla were given the same exact document and they signed the complete and correct version on November 12th, 2024, well before our motion was filed. The error occurred during my law firms e-filing process, long after the clients executed the full document so the idea, I think the argument goes by Mr. Kim that you shouldn't appoint them because they're not paying attention to the filings but it wasn't their fault. They signed off on the right document, they signed the right document. They

returned it back to me and while the paraprofessionals and I at my firm putting together the filing one of the pages was inadvertently deleted. We promptly corrected the error. It did not prejudice Mr. Muzik and it does not change that fact that Mr. Behnke and Mr. Galla are presumptively plaintiffs under the PSLRA.   Next there's this issue of the Docusign ID, Your Honor, and I think opposing counsel here is attempting to create an issue where none exists.  The corrected declaration that we've filed on December 2nd confirm that they signed the complete and correct joint declaration on November 12th. Neither the PSLRA nor the third circuit in Cendant establishes a requirement for colleague plaintiff's to sign the same page, the same signature page of a joint declaration. There may have an insinuation that they didn't receive the same document. That's just not true. They received the same exact content and the same exact words, same exact spacing, simple as that. The reason for the different document stamp ID at the top is just because we sent each client their certify --- their PSLRA certification and joint declaration together.  So one isn't going to sign the others certification obviously so we've sent them separately but the contents are exactly the same.  Your Honor, I think the evidence and --- that we put forth in the arguments they demonstrate that Mr. Behnke and Mr. Galla are the clear choice for lead plaintiff in this case.  They possess the largest financial interest, exceeding all other movements. They're

sophisticated investors with decades of experience. Well equipped to under the complexities of this case. They have a demonstrated history of hiring counsel, they've articulated a clear and detailed plan for this case and that was developed through extensive discussions with and without counsel present on their --- on their call.  They've chosen highly experienced counsel and the third circuit in <u>Cendant</u> exclusively allows as Your Honor pointed out for unrelated groups and group structures like the ones here.

THE COURT:    Is there --- is there any --- any weight to be given to the fact that the Rosen Firm --- well both firms are high competent in this area of the law from what I'm reading. I don't think there's any question about that. But is there any weight to be given to the fact that the Rosen Firm filed the lawsuit and issued the public notice?

ATTORNEY ALBERT:    In a word, Your Honor, absolutely not. The PSLRA provides for a very clear appointment of Rubick, that's title 15 USC, Section 78-U-483, there's no weight to be given to the fact that they filed the first complaint and published the first notice. In fact, as Your Honor pointed out the plaintiff that they filed with has no relation to the plaintiff that they are moving with now and as my colleague pointed out I think explicitly they moved with the --- with Mr. Muzik because he had a larger financial interest.

THE COURT:    All right. Mr. Muzik could have been

26

the plaintiff on the case or in the captions of the case; correct? That could have been done, Mr. Kim?

ATTORNEY KIM:  Pardon, Your Honor.

THE COURT:    Mr. Muzik could have been named plaintiff rather than Mr. Castle?

ATTORNEY KIM:  That's theoretically possible. I think the reason why Mr. Muzik has sought appointment of lead plaintiff is after the filing of the case the statute required us to publish notice inviting interested investors to retain counsel and seek lead plaintiff status. Mr. Muzik was one of those who had retained us to make a motion for him. So we were unaware of Mr. Muzik prior to the filing of our case, which is typical because that's the whole point of the statute requiring the issuance of a notice.

THE COURT:    Okay.  Any --- any rebuttal?

ATTORNEY KIM:  I mean I think I would just like to add I mean it's clear that this was last minute creation. Now my colleague's here indicating that the certification and the joint declaration were signed on November 12th which was the day of the lead plaintiff deadline that would indicate that this was unrelated investors that were brought together right before the deadline at the 11th hour to create the largest lost. That's what courts have said.  I understand that there are courts in this district that have approved unrelated investors. I believe in those situations those cases are distinguishable.  They're

distinguishable because A) you had situations where there was an institutional investor involved. I think one of the cases Energy Transfer you had unrelated institutional investors. The PSLRA was designed to encourage institutional investors to move forward. There's no institutional investors here yet other cases where you had joint declarations that were executed days before the lead plaintiff deadline indicating that this was not a last minute creation of counsel that didn't have the errors here.  And I get it, errors do happen. I understand that but I think standing --- you know, maybe standing alone if that was the only issue that wouldn't be much of an issue here. But I think what you have here is you have the errors with the certifications and the declarations. You've got the timing of the documents which were dated and signed and executed on November 12TH. And you have the disport losses of the group members. You don't have a dispute resolution mechanisms and we've cited cases where courts have found that those indica of a group that is not adequate or typical. So I would say in this case --- in this case, Your Honor, that the competing movements have not met that standard. Thank you.

THE COURT:    Thank you. All right. I do have a question for counsel.  Has any other cases been filed either in this district or any other district against Coinbase based upon the same theory? Are you aware of any other cases?

ATTORNEY ALBERTS:   We're not aware of any.

28

ATTORNEY DRYLESWSKI:     I'm not aware either, Your Honor.

THE COURT:     Okay.  What about Mr., I guess it would be Drylewski?

ATTORNEY DRYLEWSKI: No, we're not aware of any either, Your Honor.

THE COURT:     Okay.  And the other --- I've been presented with some form orders here and the orders are to the effect that if any other case is filed in this district or transferred to this district I should sign an order that they would automatically be consolidated with this case but I don't have the authority to do that. Only the chief judge of the district can transfer cases between --- between judges of this court so we have many related cases that are --- it depends if they file related cases but we do get cases filed that appear to be related with different judges but only the chief judge can consolidate them so.  If that ever happened, it would have been a motion filed and we'd have to get the chief judge to agree. And usually the case is sent to the --- the judge that has the lowest number but I just wanted to point that out to counsel. I don't have that authority to sign such an order like that.  That broad.  All right. I've given consideration to this. Obviously, I've done a considerable amount of reading before I took the bench. These --- this Private Security Litigation Reform Act requires a lot of study and --- and input

--- input from the district court judge and I have done considerable research under the statute and also read very carefully all the filings that I have been presented with beforehand and I've listened carefully to the --- the arguments of counsel and let me make the following ruling for the record. The Private Security Litigation Reform Act, PSLRA applies private federal security actions brought as a plaintiff class action pursuant to federal rule of civil procedure, and that's rule 23 and the statute is found in 15 United States code Section 78-U-24(a)(1) under step 1 of our consideration which concerns the standard largest financial interest to determine whether an individual or group qualifies as the lead plaintiffs the first inquiry this court must make is determining which movement has the largest financial interest in the reliefs sought by the --- by the class. And I'll give you the statutes but some of these citations are a bit awkward but it's 15 USC Section 78U-4(a)(3) capital B, small triple I, I think it's 1(b)(b) or I(b)(b), I think it's 1(b)(b) the third circuit held that we should consider these factors.  Number 1, the number of shares that the movement purchased or in imputative class period. Number 2 the total net funds expended by the plaintiffs that are in the class period and the approximate loss suffered by the plaintiffs. And Kendall Behnke and Peter Galla suffered more financial loss than William Muzik. Collectively they purchased 7530 shares. Mr. Muzik purchased 677 shares. Mr.

30

Behnke had a monetary loss of $158,450 and Mr. Gallas suffered a loss of $634,488.  Together their total loss was $792,938 compared to Mr. Muzik's loss which was $102,283.  Step 2 we have to inquire whether the lead plaintiff would satisfy the requirements of federal rule of civil procedure 28 and under that step --- I'm sorry, 23 not 28, under that step the PSLRA requires us to look at rule 23 and again it's 15 USC Section 78U-4(a)(3) capital B, double I, 1(c)(c)or I(c)(c) and also this is --- all of these things we've discussed in the Cendant case in the third circuit.  Now the two important categories under rule 23 or rules 23(a)(3) and rule 23(a)(4) typicality and adequate --- adequacy.  The typicality requirements demands that the lead plaintiff does not stand in a different position from other class members and will not employ a different legal theory than other class members. Here Mr. Behnke and Mr. Gallett --- Galla have stated they are typical of a class member because one, they purchased Coinbase securities during the class period; two, were adversely affected by the defendant's false and misleading statements or alleged false and misleading statements; and number three, they suffered damages when they --- if they prove their case and the truth becomes known. Thus Mr. Behnke and Galla claims are typical of those of other class members because their claims and claims of other class members arise out of the same course of events, and they're based on the same legal theories.  In terms of adequacy

the law requires the court to consider: one, whether the potential representative has the ability incentive to represent the claims of the class vigorously; two, whether the potential representative has obtained adequate counsel; number three, is there a conflict between the involvement claims and those asserted on behalf of the class; and four, whether the movement has demonstrated a willingness and ability to select class counsel and to negotiate a reasonable retainer agreement with that counsel.  The PSLRA explicatively permits a group of persons to serve as lead plaintiffs and not to exceed five people or groups.  15 USC Section 78(u)(4)(a)(3)(b) double I or 1 it does not have a requirement that members of a group be related.  It only requires that any such group fairly and adequately protect the interest of the class. Here Mr. Behnke and Mr. Galla stated in their joint affidavit attached to the motion to appoint lead plaintiffs that they have consulted with each other and have consi --- in quotes, have considered the benefits and potential drawbacks of proceeding individually or jointly as lead plaintiff.  Because of the complexity of the case and the substantial loss suffered because of the defendant's alleged violation of the federal securities laws we have each --- we each have the incentive, ability and desire to work together to control the litigation and maximize the recover for the class. We agree that jointly seeking appointment as lead plaintiff is in the class's best interest

32

in this case to ensure comprehensive, responsible and rigorous representation of the class throughout the case and Mr. Albert has addressed this and I am certain from his comments that what is alleged here by Mr. Behnke and Mr. Galla and the joint effort that they --- is highly accurate. I also note that the --- that Private Securities Litigation Reform Act requires that each plaintiff execute a certification which contains certain information, and those certifications have been filed in this case by both Mr. Behnke and Mr. Galla.  Mr. Behnke's certification is in the record and is document number 13-4 and Mr. Galla's certification is filed as document again 13-4(2). Mr. Behnke's certification is on page 2 and Mr. Galla's certification is on page 4.  The --- Mr. Galla and Mr. Behnke are therefore the presumptive co-plaintiffs. The presumption may be rebutted with proof from a class member that they will not fairly and adequately protect the interest of the class nor is subject to unique defenses that render such plaintiffs incapable of such adequately representing the class and again this is found in --- I think in the statute 78U-4(a)(3)(b) double I, triple I.  The court finds that Mr. Muzik has not met his burden with respect to challenging Mr. Behnke and Mr. Galla on becoming the lead plaintiffs in this case.  I have considered carefully the arguments made by Mr. Kim and I again found that the plaintiffs don't have to be related. I am --- I accept Mr. Albert's representations that he made today in court

and in his papers as to why the declarations were not --- the joint declaration was not initially filed adequately. And that's just a filing misstep that has been corrected and I don't believe the other arguments of Mr. Kim warrant the presumption of being overcome.  The --- I just don't find it reasons to be compelling to go against their presumption.  And step four, the --- step three is the rebuttal; step four is appoint lead counsel.  Under the PSLRA the lead plaintiff has the authority to select and retain counsel subject to review by the court. It's 15 USC section 78U-4(a)(b)(3)(b)(5), small B, five. The court shouldn't disturb lead counsels --- lead plaintiffs' choice of counsel unless it is necessary to protect the interest of the class and Mr. Behnke and Mr. Galla have selected the Robbins Geller Firm as their lead counsel. This firm has considerable experience in class action securities litigation and Mr. Albert has noted that the firm has obtained the largest securities fraud class action recoveries in the 5th, 6th, 7th, 8th, 10th and 11th circuits and this firm is highly qualified to represent lead counsel in this case and I find there is no basis to interfere with this strong presumption and favor approving them as --- as counsel.  There are other things that have been mentioned here I know by Mr. Albert and send in Judge Becker's opinion and Judge Kearney's opinion, it's clear --- it's clear that this court does not have to engage in an extensive inquiry and I also as to who should serve as lead

34

plaintiffs.  And the duo seeking to be lead plaintiffs need only to make a prima facia showing under the statute.  They --- I have considered those requirements of the law and it's clear to me that Mr. Behnke and Mr. Galla should be the lead plaintiffs in this case and that Robbins Geller Firm should be appointed to be lead plaintiff's counsel. All right.  I'm not sure --- does counsel feel that I have to make any further inquiry in this case, or I've covered it all?  I think the only other thing that I --- I read or that I may not have mentioned is the reasonableness of a retainer agreement.  Could you tell me how that is negotiated, Mr. Albert?

ATTORNEY ALBERT:    I'm sorry, Your Honor, can you repeat your question, please?

THE COURT:    Yes, I believe the only thing I haven't mentioned that is one of the factors that I have to consider is the negotiation of a reasonable retainer agreement. And I thought maybe you could just enlighten us just a bit how it works.

ATTORNEY ALBERT:    Sure, Your Honor, I'm not sure that that is one of the factors sent forth in Cendant and definitely not in the statute itself in terms of materials ---

THE COURT:    Okay.

ATTORNEY ALBERT:    --- that you should consider at the appointment process but with that said we're more than happy to submit our retainer agreement in camera to Your Honor.

35

THE COURT:     All right. I don't think I need to see it but I do know there have been many different ways that counsel has been selected. One has been through the method of an auction.  I noticed that but I don't think that would be required in this case at all given what I know about the case and I looked at Judge Becker's through analysis of whether an auction should be --- when and if an auction should be used. I don't --- don't believe it applies here but I'm --- I'm going on the proposition that the --- the fee arrangement would be a percent of recovery if that's the way to say it. Would that appropriate?

ATTORNEY ALBERT:     You're absolutely right, Your Honor and ---

THE COURT:     All right.

ATTORNEY ALBERT:     And subject to your approval at the end of the case.

THE COURT:     Right, I would have the right to approve it, and Judge Becker did go through really the history of fee agreements. I thought it was a fascinating discussion is --- his analysis of not only the statute but the history of fee agreements so with that is there anything else anybody wants to submit? Any other ---?

ATTORNEY ALBERT:     No, Your Honor.

THE COURT:     All right. Now I do have a proposed order that has been submitted but I'll have to draft my order

out. I'll have to delete the language which states that I shall consolidate the cases for the reasons that I said I can't consolidate the cases, but you should see an order hit the docket if not I would say by tomorrow. All right. Now what's the next step for the defendant to file a response to the complaint.

ATTORNEY ALBERT:    I would sure hope so, Your Honor, but typically in these cases ---.

THE COURT:    Let's see we have here Mr. --- I always want to get names correct. Mr. Drylewski.

ATTORNEY DRYLEWSKI: Yes, Your Honor.  There's a stipulation on the docket, I believe it's ECF number 5 that sets forth the process going from here and what it says in that stipulation it was so ordered by the court is that the defendants will confer with lead counsel now appointed and within ten business will revert with a proposed schedule for Your Honor's approval for a filing of an amended complaint if there will be one and then any motion to dismiss either the operative complaint here or the amended complaint of when it's so filed.

THE COURT:    Okay.  All right.  Mr. Kim from what I'm reading your law firm has any of these cases so sometimes you're appointed lead counsel and sometimes you're not.

ATTORNEY KIM:  Can't win them all but with the Eagles victory yesterday I think it will be easier to swallow.

37

THE COURT:    Yeah.  All right. Anything further?  I will stand in recess.

(Court adjourned)


C E R T I F I C A T E


    "I, Tracey Johns,  court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter."



_____                    2-4-25

Signature for Approved Transcriber        Date

    Tracey Johns

Typed or Printed Name